## HILL v. ALEXANDER *et al., Appellants.*

1. **Partition**: PARTIES. In a suit in the nature of an equitable partition between beneficiaries under a will providing that they should account for, and their respective shares in the estate should be diminished by, the amount of their notes, or the notes of their husbands, held by the testator; *Held*, that the husbands were proper parties to the suit, for the purpose of ascertaining the extent of their indebtedness and determining the distributive interests of the beneficiaries.

2. **Practice in Supreme Court**: WITNESSES. The exclusion of a witness, upon a specific objection as to his competency, will not be considered by the Supreme Court, unless an exception be saved to the ruling of the trial court, and its attention be called to the matter in the motion for a new trial.

3. **Joint Debtors, Release of.** Under the statute, (Gen. St. 1865, p.

398, § 9,) a creditor might release one joint debtor without impairing his right to demand and collect the remaining indebtedness from the other debtor. *Held*, also, in the case at bar, that no intention to release had been shown.

*Error to Howard Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*Chas. A. Winslow* for plaintiffs in error.

*Major & Shafroth* for defendants in error.

PHILIPS, C.—This is in the nature of an equitable partition suit between the beneficiaries under the will of Archibald Hill, begun in 1877. It appears that Archibald Hill left a will executed in April, 1871, and which was duly probated in 1877. The provisions of the will pertinent to this controversy are the fourth and fifth clauses, as follows:

Fourth. It is my will and I devise that all my estate, after the payment of my debts and funeral expenses, real, personal and mixed, be equally divided, share and share alike, between all my children, except my son Archibald B. Hill, and that in such division it is to be considered that at the marriage or time when my children left me, all received equal portions of my estate by way of advancement from me, except the money lent to my said children, or to their husbands, and for which I have their notes, with the interest due thereon, according to the tenor of said notes, and to be accounted for as so much money due from them to my estate, and to form a part of their dividends therein; and if any one of my heirs, or their husbands, whose notes I hold, refuses to account for the same, according to the tenor and effect of said notes, they are not, after such refusal or neglect to pay and account for the same, to have any portion or dividend of my estate, real, personal or mixed. I make this provision in my will to force those

heirs whose notes I have, to account for the same regardless of the date of the same, or to forfeit by their neglect or refusal any and all interest in my estate.

Fifth. I will and direct that my executors pay to my son Archibald B. Hill, $100, in full of all that he is to have of my estate, real, personal or mixed, for the reason that I consider that the property and money which he has taken from me and what I have given him amounts to his full share of my estate; and further, because of the undutiful and disrespectful and insulting conduct of my said son, Archibald B. Hill, toward me and members of my family in my presence.

The petition stated in substance, that the testator died seized in fee of a tract of land situated in Howard county, aggregating about 920 acres, described in the petition. The provisions of the will are set out, as also the respective interests of the devisees and legatees. His daughter Martha, intermarried with Jeremiah Alexander, at the time of descent cast was dead, leaving Jeremiah Alexander, her husband, and their children surviving. The petition set out the indebtedness of the heirs, and the husbands of the daughters to the testator. The indebtedness of Jeremiah Alexander was as follows: One note for $270.27, dated October 27th, 1860, with ten per cent interest from date; one joint note with Archibald B. Hill for $80, dated August 24th, 1865, interest six per cent from date; and one joint note with Archibald B. Hill for $3,088, dated November 6th, 1865, with no rate of interest expressed. The children of said Martha and Jeremiah Alexander, the petition alleged, were jointly entitled to one-sixth of the real estate and notes, less the individual note of said Jeremiah, and one-half of the notes executed jointly with A. B. Hill. Like averments are made as to the respective interests of the other heirs. It is then averred that the land is not susceptible of division in kind. The petitioners prayed for a sale of the premises, and after payment of debts of the estate mentioned, they ask that the proceeds be divided

between the parties according to their respective rights under the will.

The defendants to this petition are said Jeremiah Alexander and children, and the widow and minor children of decedent. The plaintiffs are the other heirs. To this petition the defendant Jeremiah Alexander demurred on the ground that he was not a necessary party to the suit. This demurrer was overruled and he filed no further plea. Celia Long and her husband and Archibald Alexander, two out of the number of Jeremiah Alexander's children, answered, denying that said Jeremiah was indebted to the estate on the two notes executed jointly with Archibald B. Hill, alleging that he signed them as surety for said Hill receiving no benefit therefrom, and then alleged that said Hill was discharged from the payment of said note by the provisions of the will. The defendants, by their guardian *ad litem*, filed the usual answer. And plaintiffs replied, tendering the general issue.

Plaintiffs on the trial read in evidence the will and the notes of Jeremiah Alexander. Defendants then introduced as witnesses two of the defendants, children of Jeremiah Alexander, by whom they sought to prove that in the winter of 1871 they heard their grandfather use language indicating that he had made his will and had given the $3,088 to their father. Jeremiah Alexander was then offered as a witness, and his competency objected to by plaintiffs on the ground that the other parties to the note, the two Hills, were dead. Plaintiffs then in rebuttal offered evidence tending to prove that Jere. Alexander and A. B. Hill were partners, and that the $3,088 note was given by them in settlement of what they jointly owed the testator.

The court found the issues for the petitioners, establishing by its decree the interests and rights of the parties, the amount of the debts respectively owing by them to the testator: "that said Jeremiah Alexander, husband of Martha Alexander, deceased, who was a daughter of said Hill, is indebted to said estate by three notes, one

dated October 27th, 1860, for $270.27, bearing ten per cent interest from date; one a joint note with Archibald B. Hill, who was son of Archibald Hill, for $80, dated August 24th, 1865, six per cent interest from date; also a joint note with said A. B. Hill for $3,088, November 6th, 1865; no rate of interest expressed." And the court decreed in respect of this indebtedness of Jeremiah Alexander that his said children " are collectively entitled to an undivided sixth of said real estate, and the gross indebtedness on said notes, less the indebtedness of Jeremiah Alexander, to the extent of his individual note, and his indebtedness of one-half of the amount of the joint notes with A. B. Hill, as above mentioned."

The parties complaining of this decree are Jeremiah Alexander and his children. They seek a reversal of the decree on three grounds principally: 1st, Because of the refusal of the court to sustain the demurrer of Jeremiah Alexander. 2nd, Because of the exclusion of Jeremiah Alexander as a witness. 3rd, Because by the terms of the will the joint notes of Hill and Alexander were forgiven.

As to the first error complained of, I am of opinion that Jeremiah Alexander was properly made a party defendant. While there are some general rules by which the pleader and court may ordinarily determine who ought to be and who may not be joined as parties, yet the law is flexible enough to permit many cases to be determined by their own peculiar circumstances. Justice Story aptly expresses this idea: "The general rule in relation to parties does not seem to be formed on any positive and uniform principle; and, therefore, it does not admit of being expounded by the application of any universal theorem or test. * * Whether the common formulary be adopted, that all persons materially interested in the suit, or in the subject of the suit, ought to be made parties, or that all persons interested in the object of the suit ought to be made parties, we express but a general truth in the application of the doctrine which is

*1. PARTITION: parties.*

useful and valuable, indeed, as a practical guide, but is still open to exceptions, qualifications and limitations, the nature, extent and application of which are not and cannot independently of judicial decision be always clearly defined." Story Eq. Plead., § 76 c. It does not always follow, because no affirmative relief is asked against a party, he may not be joined as defendant with others. A defendant may in some cases be a proper party to a suit, although not a necessary party; and he may be a necessary party not only where no decree relative to the subject matter can be made without him, but " where the defendants in the suit have such an interest in having such person before the court as would enable them to make the objection if he were not a party." *Bailey v. Inglee*, 2 Paige 278.

The will of Archibald Hill is the basis of this suit. It in terms directs that, as a condition precedent to the right of any of the beneficiaries named to share in a division of his estate, any and all sums owing by them to him on notes which he held against them should be brought into *hotch-potch*, nor did this apply alone to his children, but expressly to any notes held by him against the hus-band of any of his daughters. "And if any of my (the testator's) heirs or their husbands, whose notes I hold, refuse to account for the same, according to the tenor and effect of said notes, they are not, after such refusal or neglect, * * to have any portion or dividend of my estate." In order then to determine the distributive share and interest of Jeremiah Alexander's children in said estate, it was an essential preliminary step to ascertain and settle the extent of his indebtedness to the testator, on account of these notes found by these executors among the testator's papers. Was this inquiry to proceed against his adult and minor children without the presence of the debtor, the very husband named in the will? Would not they have had the right to stop the case *in limine* if sued alone, and insist on their father being brought into the controversy, a vital feature of which was to ascertain the

state of the alleged indebtedness between him and their devisor?

In *Warner v. Paine*, 3 Barb. Ch. 630, which was an application for an injunction to restrain defendants from selling property under a mortgage involving, in the progress of the case, a question as to whether an execution had been issued for more than was actually due upon the judgment, it was held that the judgment debtors were necessary parties. In *Gaylords v. Kelshaw*, 1 Wall. 81, it is held that in a suit to set aside a deed in fraud of creditor involving a question of indebtedness on the part of the grantor to the attacking creditor, that this debtor is a necessary party defendant; as it is his insolvency which is to be established.

Jeremiah Alexander ought not to complain of being brought into this controversy, for it involved a settlement and payment of his indebtedness in and through his children. No judgment is taken against him involving any loss to him or imposing on him any costs. How is he injured? His children and co-defendants ought not to complain. They cannot escape the adjustment of their father's debts to the testator's estate so long as they claim anything under the will, and they do not relinquish its provisions.

The case of *Alexander v. Warrance*, 17 Mo. 228, in nowise conflicts with this opinion. That was an ordinary statutory proceeding involving no ascertainment of indebtedness of Warrance to the ancestor as preliminary to the right of partition among his co-defendants. He was merely a *terre tenant* sought to be ejected after the partition among the owners of the land. This was not only bad as multifarious, but bad because it conjoined an action in partition with one in ejectment. *Lambert v. Blumenthal*, 26 Mo. 471. The inapplicability of the doctrine announced in *Alexander v. Warrance* to the facts of this case is further pronounced in the case of *Reinhardt v. Wendeck*, 40 Mo. 577.

It is next complained that the court erred in excluding Jeremiah Alexander as a witness. If there was any force

2. PRACTICE IN SU-
PREME COURT:
witnesses.
in this objection the plaintiff in error has not saved the point. Indeed, the bill of exceptions wholly fails to show that plaintiffs' objection to the competency of this witness was sustained by the court, or even that the witness was excluded, or that defendants saved any exceptions to the imputed action of the trial court. All that appears in the record touching this matter is the following recital in the bill of exceptions: "Defendant had offered Jeremiah Alexander as a witness, to which plaintiff objected upon the ground that the two parties to the note in controversy were dead." This is wholly insufficient to raise here the question so elaborately and ably discussed by defendants' counsel before this court. *Harrison v. Bartlett*, 51 Mo. 170; *State v. Ray*, 53 Mo. 345; *City of St. Joseph v. Ensworth*, 65 Mo. 628; *Margrave v. Ausmuss*, 51 Mo. 561. Nor is it sufficient that an exception should be saved at the time to the objectionable ruling of the court, but the error must be specifically again called to the court's attention in a motion for new trial. *Hannibal & St. Joseph R. R. Co. v. Clark*, 68 Mo. 371. The motion for new trial in this case did not in terms even call the attention of the trial court to this alleged error.

The only remaining question raised by plaintiffs in error, deemed important to be considered is, that by the terms of

3. JOINT DEBTORS,
RELEASE OF.
this will the notes of A. B. Hill to which Jeremiah Alexander was a party, were forgiven. At common law a release of one of several obligors discharged the others, provided it was a technical release under seal. *McAllister v. Dennin*, 27 Mo. 42. But under section 9, page 398, General Statutes 1865, then in force, a creditor might release one joint debtor, "without impairing his right to demand and collect the balance of such indebtedness from the other debtor." The fifth clause of the will would hardly indicate a purpose on the part of the testator to release Hill, much less Alexander. The testator asserts in energetic language, his reason for ex-

cluding his son from a further participation in his estate. It was because " I consider the property and money which he has taken from me and which I have given him amounts to his full share;" and because of his son's reprehensible conduct toward the testator and family. There is in this not much of the spirit of forgiveness. To get at the testator's intent all the provisions of his will should be construed together. In the fourth clause he directly mentions " the money lent to my (his) children, or to their husbands, and for which I have their notes     *     *     to be accounted for as so much money due from them to my estate." This will was executed the 11th day of April, 1871; while defendants' witnesses, by whom they sought to show, *de hors* the will, the purpose of the testator to release this note, testified to statements made by him " in the winter of 1871." If it was the mind of the testator to release these notes, why did he not say so in this will? Why did he not surrender the notes to the makers ? Why did he retain them in his possession for six years afterward, and until his death? The trial judge very properly disregarded in his finding such evidence of interested heirs against a dead man whose solemn testament and acts *in pais* contradicted them. I do not think these objections well taken, and, therefore, affirm the judgment of the circuit court. In this opinion Martin, C., concurs ; Winslow, C., not sitting, having been of counsel.